UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.                                         **MEMORANDUM OPINION AND ORDER**
                                          Criminal No. 17-135(1) ADM/DTS

Rodolfo Anguiano, Jr.,

        Defendant.

_____

David P. Steinkamp, Assistant United States Attorney, United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

Ian S. Birrell, Esq., Birrell Law Firm PLLC, Minneapolis, MN, on behalf of Defendant.
_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Rodolfo Anguiano, Jr.'s ("Anguiano") Motions for Reduction of Term of Imprisonment [Docket Nos. 590, 608].[1] Anguiano requests a compassionate release sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) based on health concerns. The Government opposes the Motion, arguing that Anguiano has not shown extraordinary and compelling reasons warranting release, and that a sentence reduction would be inconsistent with the sentencing factors listed in 18 U.S.C. § 3553(a). For the reasons set forth below, the Motions are denied.

## II. BACKGROUND

In May 2015, law enforcement executed a search warrant for Anguiano's hotel room and found a .40 caliber Beretta handgun, a digital scale, and 1.6 kilograms of methamphetamine in a

---

[1] Anguiano filed his first Motion pro se and requested the assistance of an attorney. Counsel was appointed, and Anguiano's attorney filed a second Motion on his behalf.

locked armoire.  Presentence Investigation Report ("PSR") [Docket No. 199] ¶ 12.  Elsewhere in the room, officers found a key to a Chevrolet Equinox that was parked outside the hotel.  Id. ¶ 13.  Law officers obtained a warrant to search the Equinox and found an additional 83 grams of methamphetamine, 46 grams of marijuana, two cell phones, a digital scale, and a .22 caliber Mossberg model 715P assault rifle, with ten rounds in the magazine.  Id.

On January 9, 2018, Anguiano entered a conditional plea of guilty to possession with intent to distribute more than 500 grams of methamphetamine, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  See Min. Entry [Docket No. 165]; Plea Agreement [Docket No. 172].  Anguiano was sentenced in May 2018 to a prison term of 132 months.  Min. Entry [Docket No. 261]; Sentencing J. [Docket No. 262] at 2.  The sentence was a downward variance from the applicable sentencing guidelines range of 168 to 210 months.  Statement Reasons [Docket No. 263] at 1, 4.  At sentencing, the Court found that "the defendant's low criminal history" warranted a downward variance.  Sentencing Tr. [Docket No. 282] at 14.  The Court noted that the sentence "reflects a very strong graduated sanction above any time previously served," and was "sufficient but not more than necessary."  Id.  The Court further stated that a mandatory minimum sentence of 120 months "wasn't sufficient to reflect the severity of the involvement of the [Beretta] gun."  Id. at 15.  The Court imposed a sentence that was one year longer than the mandatory minimum "to reflect the presence of the firearm."  Id.

Anguiano is incarcerated at the United States Penitentiary in Lompoc, California ("Lompoc USP").  See Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Apr. 22, 2021).  He has served approximately four years of his 11-year sentence, and his projected release date is September 18, 2026.  Id.; Def.

Add. [Docket No. 609] at 10.  Anguiano has not had any disciplinary violations while in custody.  Def. Add. at 1.

Anguiano now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  Anguiano, age 37, argues that he suffers from severe obesity, type 2 diabetes, hypertension (high blood pressure), and asthma, and that these health conditions make him particularly vulnerable to severe illness or death if he were to again contract COVID-19.  Anguiano argues the living conditions in prison prevent him from mitigating the risk of contracting COVID-19 because the close confines of the prison environment make social distancing nearly impossible.

In recent months, the Lompoc FCC complex, which includes Lompoc USP, has been receiving shipments of the COVID-19 vaccine and has been administering it to staff and inmates as doses become available.  See Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited Apr. 22, 2021).  As of the date of this Order, 213 staff members and 788 inmates at Lompoc FCC have been fully vaccinated.  Id.  There are currently no inmates or staff members infected with COVID-19 at Lompoc USP.  Id.

Outbreaks of COVID-19 have occurred at Lompoc USP.  Id.  The facility reports that 197 inmates and 48 staff members previously tested positive for the illness and have since recovered.  Id.  Sadly, two inmates died from the virus.  Id.

Anguiano tested positive for COVID-19 in July 2020.  Def. Add. at 141.  His medical records state that he was asymptomatic.  Id.  On December 30, 2020, Anguiano was offered the COVID-19 vaccine but declined to receive it.  Id. at 250.  Anguiano states that at the time it was offered, he had heard rumors that the vaccine would affect his kidneys as a diabetic and had also heard anecdotes about people getting very sick after taking the vaccine.  Having now learned

more about the vaccine's safety, Anguiano has requested the vaccine and is on a waiting list to receive it.

Anguiano argues that his medical issues, combined with the COVID-19 pandemic and the conditions at Lompoc USP, constitute extraordinary and compelling circumstances that warrant his release. He also states that his father is on dialysis and that his family would benefit from Anguiano's assistance with transporting his father to and from appointments. Anguiano's reentry plan, approved by the United States Probation Office, includes residing in an apartment in Yuba City, California. Compass. Release Investig. [Docket No. 603] at 1.

The Government opposes Anguiano's Motions, arguing that Anguiano has not established extraordinary and compelling reasons that would warrant release because he has already had COVID-19 and has refused the vaccine. The Government also argues that the sentencing factors listed in 18 U.S.C. § 3553(a) militate against Anguiano's release.

### III. DISCUSSION

#### A. Legal Standard

Generally, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of the few exceptions to this general rule is the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may reduce a term of imprisonment if, "after considering the factors set forth in section 3553(a)," the court finds that "extraordinary and compelling reasons" warrant a sentence reduction, "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement addressing sentence reductions under §

3582(c)(1)(A) defines "extraordinary and compelling reasons" to include serious medical conditions or cognitive impairments "that substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 comment n.1(A)(ii). "Extraordinary and compelling reasons" also include family circumstances in which the caregiver of the defendant's minor children has died or become incapacitated, or where the defendant's spouse or registered partner is incapacitated and the defendant is the only available caregiver. U.S.S.G. § 1B1.13 comment n.1(C). A catch-all provision also exists for "other reasons" that may cause a defendant's case to be extraordinary or compelling. U.S.S.G. § 1B1.13 comment n.1(D).

The policy statement also requires the court to determine that "[t]he defendant is not a danger to the safety of any other person or to the community" before a sentence reduction may be granted under § 3582(c)(1)(A). U.S.S.G. § 1B1.13(2).

A defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

**B. Analysis**

    **1. Exhaustion**

Anguiano has satisfied the exhaustion requirement because he filed a request for release with the warden of his facility and it was denied. He continued to pursue administrative remedies through the BOP but was unsuccessful. See Def. Add. at 47–72. His Motions are therefore ripe for review.

### 2. No Extraordinary and Compelling Circumstances

When considering compassionate release motions in the context of the COVID-19 pandemic, courts have required an inmate to show both a "particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility." United States v. Miland, No. 16-0159 (WMW), 2020 WL 3249259, at *3 (D. Minn. June 16, 2020) (quoting United States v. Feiling, No. 3:19-112 (DJN), 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020)); accord United States v. Ramirez, No. 17-10328 (WGY), 2020 WL 2404858, at *3 (D. Mass. May 12, 2020); United States v. Shamilov, No. 19-cr-238 (SRN), 2020 WL 2029600, at *3 (D. Minn. Apr. 28, 2020).

Anguiano argues he is particularly susceptible to COVID-19 because he suffers from severe obesity, type 2 diabetes, hypertension, and asthma. Anguiano's body mass index ("BMI") was 48.3 in January 2021, which meets the Centers for Disease Control and Prevention's ("CDC") definition of severe obesity (BMI over 40). See Def. Add. at 117; CDC, Coronavirus Disease 2019, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 22, 2021). He also suffers from type 2 diabetes that is not well controlled.[2] Def. Add. at 22, 117-19, 128, 136–37. The CDC's guidelines state that obesity and type 2 diabetes are conditions that increase the risk of severe illness from COVID-19. See CDC, Coronavirus Disease 2019, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-condit

---

[2] Anguiano's medical records from November 2020 and January 2021 state that he has a history of noncompliance with his insulin regimen. See Def. Add. at 117, 128.

ions.html (last visited Apr. 22, 2021).  Anguiano has also been diagnosed with hypertension, a condition that the CDC recognizes as possibly increasing the risk of severe illness.  See id.; Def. Add. at 128.

Anguiano claims he has asthma because he was issued an inhaler, but his medical records do not indicate that he has asthma.  Anguiano was prescribed an inhaler in January 2021 after he complained of "intermittent loss of breath."  Def. Add. at 122.  At the time the inhaler was prescribed, Anguiano's lungs sounded clear and his blood oxygen level was 99%.  Id. at 122–23.  He was assessed as having "unspecified abnormalities of breathing."  Id. at 13.

Although Anguiano's obesity, diabetes, and hypertension place him at greater risk for severe illness from COVID-19, this risk is mitigated by his opportunity to receive the vaccine.  COVID-19 vaccines are safe and effective at preventing COVID-19, and also protect against serious illness from COVID-19.  CDC, COVID-19, Benefits of Getting a COVID-19 Vaccine, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (last visited Apr. 22, 2021).  Anguiano declined the opportunity to reduce his risk by choosing not to get the vaccine.  Given his past refusal to take this significant preventative measure, Anguiano cannot now claim that extraordinary and compelling circumstances warrant his release.  See United States v. McBride, No. 519CR07, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) (denying compassionate release for defendant with type 2 diabetes because "[d]efendant's refusal to take preventative measures undermines his assertion that extraordinary and compelling reasons exist to warrant his release from prison"); United States v. Gonzalez Zambrano, No. 18-CR-2002, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021) ("Although defendant has a right to refuse medical treatment, the Court finds that it would be inappropriate to reward her refusal to protect

herself by granting her release.  It would be paradoxical to endorse a system whereby a defendant could manufacture extraordinary and compelling circumstances for compassionate release by unreasonably refusing the health care afforded to them.").

Additionally, Anguiano's successful recovery after a positive COVID-19 test result likely lowers his risk of re-infection.  The CDC states that "[c]ases of reinfection with COVID-19 have been reported, but remain rare."  CDC, Reinfection with COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited Apr. 22, 2021).  While some anecdotal evidence of reinfection exists, the actual risk of COVID-19 reinfection is largely unknown at this time.  Id.  A number of courts have declined to grant compassionate release based on fears about reinfection. United States v. Billings, No. 19-cr-99, 2020 WL 4705285, at *5 (D. Colo. Aug. 13, 2020) .

Anguiano's desire to help his family with transporting his father to dialysis appointments is also not an extraordinary and compelling reason to reduce his sentence.  "Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary."  United States v. Ingram, No. 14-CR-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019).

### 3. Sentencing Factors

Even if Anguiano could show extraordinary and compelling circumstances, the Motions would be denied because the sentencing factors in 18 U.S.C. § 3553(a) weigh against Anguiano's release.  The § 3553(a) sentencing factors include "the nature and circumstances of the offense" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant."

18 U.S.C. § 3553(a).

The seriousness of the offense—attempting to traffic over 1.74 kilograms of methamphetamine and the involvement of a firearm—warrants a sentence of 132 months, even when considering Anguiano's medical conditions and the COVID-19 pandemic.  When sentencing Anguiano, the Court departed substantially downward and imposed a sentence that was specifically tailored to account for Anguiano's low criminal history yet also reflect the seriousness of his crime and the need for adequate deterrence.  Reducing Anguiano's sentence by more than 60% would undermine these sentencing goals.

### IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that Defendant Rodolfo Anguiano, Jr.'s Motions for Reduction of Term of Imprisonment [Docket Nos. 590, 608] are **DENIED**.

BY THE COURT:


  s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT COURT

Dated:  April 22, 2021